# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

USCA No. 25-1229

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUSTIN JAMES SCHNEIDER,

Defendant - Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION
HONORABLE CHARLES B. KORNMANN
UNITED STATES DISTRICT JUDGE

---

## APPELLANT'S BRIEF

---

Jason J. Tupman, Federal Public Defender
Anne M. Carter, Assistant Federal Public Defender
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
112 Roberts Street, N., Suite 200
Fargo, ND 58102
Phone: (701) 239-5111
Fax: (701) 239-5098

ATTORNEYS FOR APPELLANT

# SUMMARY OF THE CASE

Appellant Justin James Schneider was charged with the misdemeanor offense of assault by striking, beating, or wounding after he engaged in a fight with Rayce Hoisington. Mr. Schneider consented to proceed before a magistrate judge.

The government offered Rule 404(b) evidence that, prior to the fight, Mr. Schneider shot at Mr. Hoisington's father's residence. The only evidence that connected Mr. Schneider to the shooting was the testimony of Mr. Hoisington's sister, who was not present at the shooting. She claimed Mr. Schneider later apologized to her for it after she had threatened him. The admission of this evidence was error because the government did not establish Mr. Schneider committed the shooting.

The jury convicted Mr. Schneider. The magistrate judge sentenced him to time served — over 400 days in custody as of sentencing. The time-served sentence was plainly erroneous because it exceeded the statutorily authorized sentence of one year.

Mr. Schneider appealed the Rule 404(b) ruling to the district court, which affirmed. This Court should reverse and remand this case for a new trial and resentencing.

# REQUEST FOR ORAL ARGUMENT

Mr. Schneider requests 15 minutes of oral argument to discuss the erroneous admission of evidence and the illegal sentence.

Appellate Case: 25-1229     Page: 2     Date Filed: 06/27/2025 Entry ID: 5531845

# TABLE OF CONTENTS

Page(s)

Summary of the Case ...........................................................................................i

Request for Oral Argument ...............................................................................i

Table of Authorities ........................................................................................iv

Jurisdictional Statement ...................................................................................1

Statement of the Issues Presented for Review ................................................1

Statement of the Case ......................................................................................2

    I.     Factual background ...........................................................................2

         A.     July 19, 2022: Mr. Schneider was shot ...............................2

         B.     July 26, 2022: County officials find a bullet hole in a fuel tank ................................................................................3

         C.     October 26, 2022: Fight between Mr. Schneider and Mr. Hoisington ..................................................................5

    II.    Procedural history ............................................................................7

         A.     Trial ......................................................................................7

         B.     Sentencing ............................................................................9

         C.     Appeal to the district court ...............................................11

Summary of the Argument ..............................................................................11

Argument ........................................................................................................12

    I.     The court erred by admitting evidence under Rule 404(b) because the government did not present sufficient evidence to show Mr. Schneider committed the alleged wrongful act .........................................12

Appellate Case: 25-1229    Page: 3    Date Filed: 06/27/2025 Entry ID: 5531845

II. The statutory maximum sentence was one year. The court plainly erred in imposing a sentence of time served because Mr. Schneider had served over 400 days in custody ...........................................18

Conclusion...................................................................................................22

Certificate of Service ..................................................................................23

Certificate of Compliance ..........................................................................24

Addendum

    Judgment (R. Doc. 106).......................................................................Add. 1

    Memorandum Opinion and Order on Appeal (R. Doc. 123) .....................Add. 5

Appellate Case: 25-1229    Page: 4    Date Filed: 06/27/2025 Entry ID: 5531845

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ..............................................................18

*Huddleston v. United States*, 485 U.S. 681 (1988)...........................................1, 14, 16

**United States Court of Appeals Cases**

*United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) ...........................................12

*United States v. Edwards*, 111 F.4th 919 (8th Cir. 2024).................................. 12, 16

*United States v. Hayward*, 124 F.4th 1113 (8th Cir. 2025) ....................................15

*United States v. McDill*, 871 F.3d 628 (8th Cir. 2017)..........................................19

*United States v. Midkiff*, 614 F.3d 431 (8th Cir. 2010) .........................................13

*United States v. Parks*, 902 F.3d 805 (8th Cir. 2018)............................................13

*United States v. Phillips*, 124 F.4th 522 (8th Cir. 2024) ................................... 1, 21

*United States v. Spratt*, — F.4th —, 2025 WL 1718226  (8th Cir. June 20, 2025) ...........13

*Williams v. York*, 891 F.3d 701 (8th Cir. 2018) ...................................................18

**United States Code**

18 U.S.C. § 113(a)(4) ..........................................................................1, 18, 19

18 U.S.C. § 1152 ...............................................................................................1

18 U.S.C. § 3231 ...............................................................................................1

18 U.S.C. § 3401 ...............................................................................................1

18 U.S.C. § 3402 ...............................................................................................1

Appellate Case: 25-1229   Page: 5   Date Filed: 06/27/2025 Entry ID: 5531845

18 U.S.C. § 3585 ......................................................................................... 1, 20

18 U.S.C. § 3585(a) ........................................................................................ 20

18 U.S.C. § 3585(b) ........................................................................................ 20

28 U.S.C. § 1291 ................................................................................................ 1

**Other Authorities**

Fed. R. Crim. P. 59(g)(2)(D) ........................................................................ 12

Fed. R. Evid. 404(b) ................................................................................ *passim*

Fed. R. Evid. 404(b)(1) .................................................................................. 13

Fed. R. Evid. 404(b)(2) .................................................................................. 13

Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ ............. 21

Appellate Case: 25-1229     Page: 6     Date Filed: 06/27/2025 Entry ID: 5531845

# JURISDICTIONAL STATEMENT

Justin Schneider appeals from the final Judgment in a Criminal Case, entered on August 15, 2024. R. Doc. 106. Proceeding before a magistrate judge,[1] Mr. Schneider was found guilty by a jury of assault by striking, beating, and wounding, in violation of 18 U.S.C. §§ 1152 and 113(a)(4). R. Doc. 106. Mr. Schneider appealed his conviction to the district court on August 28, 2024, R. Doc. 109, and, on January 23, 2025, the district court affirmed. R. Doc. 123. Mr. Schneider timely filed his notice of appeal to this Court on February 3, 2025. R. Doc. 124.

The magistrate judge had jurisdiction under 18 U.S.C. §§ 3231 and 3401. The district court had appellate jurisdiction under 18 U.S.C. § 3402. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**I.     The court erred by admitting evidence under Rule 404(b) because the government did not present sufficient evidence to show Mr. Schneider committed the alleged wrongful act.**

    1.    Fed. R. Evid. 404(b)
    2.    *Huddleston v. United States*, 485 U.S. 681 (1988)

**II.    The statutory maximum sentence was one year. The court plainly erred in imposing a sentence of time served because Mr. Schneider had served over 400 days in custody.**

    1.    18 U.S.C. § 113(a)(4)
    2.    18 U.S.C. § 3585
    3.    *United States v. Phillips*, 124 F.4th 522 (8th Cir. 2024)

---

[1] The Honorable Mark A. Moreno, United States Magistrate Judge.

Appellate Case: 25-1229     Page: 7     Date Filed: 06/27/2025 Entry ID: 5531845

# STATEMENT OF THE CASE

## I.      Factual background

This case arises from a fight between Justin Schneider and Rayce Hoisington on October 26, 2022. In addition to that fight, the evidence at trial related to two incidents between the Schneiders and Hoisingtons in July 2022. The Schneiders believed that Mr. Hoisington and his cousin were responsible for shooting Mr. Schneider in the genitalia. The Hoisingtons believed Mr. Schneider was responsible for shooting a fuel tank near Mr. Hoisington's father's residence.

### A.      July 19, 2022: Mr. Schneider was shot

Early in the morning on July 19, 2022, Justin Schneider was shot. Trial Tr. Vol. II, at 281.[2]

At the time of the shooting, Mr. Schneider was at the home of Brian Derockbraine. *Id.* at 282. Mr. Derockbraine saw Rayce Hoisington driving his truck around nearby, with Mr. Hoisington's cousin in the passenger seat. *Id.* Mr. Hoisington drove onto Mr. Derockbraine's property at least three times. *Id.* at 283. While the truck was still on the property, Mr. Derockbraine went inside. *Id.* From inside, he heard a noise "like firecrackers going off, like four or five pops" and the sound of Mr. Hoisington's truck driving away. *Id.* A couple of minutes later, Mr. Schneider came

---

[2] Mr. Schneider will refer to the transcript of the jury trial (R. Doc. 113) as "Trial Tr.," followed by the appropriate volume number. He will refer to the transcript of the sentencing hearing (R. Doc. 114) as "Sent. Tr."

inside in a state of shock. *Id.* at 283-84. Mr. Schneider was holding his leg and told Mr. Derockbraine that he had been shot. *Id.* at 284. Mr. Derockbraine believed that there was no one, other than Mr. Hoisington and his cousin, who was outside the home and could have shot Mr. Schneider. *Id.*

Mr. Schneider called his wife, Brittany Schneider, to come help him. *Id.*; Trial Tr. Vol. I, at 112-13. Brittany picked up Mr. Schneider, called 911, and arranged to meet an ambulance. *Id.* at 113-14. As they drove to meet the ambulance, Mr. Schneider was in severe pain. *Id.* at 115. He told Brittany he had been shot in the penis. *Id.* He also told her that the shooting "was a drive by." *Id.*

When the Schneiders arrived at the ambulance, Brittany met with an officer from the Bureau of Indian Affairs and a deputy from the Corson County's Sheriff's Office. *Id.* at 116. The BIA officer asked if Mr. Schneider was Indian (and, therefore, under BIA jurisdiction). *Id.* When Brittany told them he was not, the sheriff's deputy told her that someone would be sent to meet with her. *Id.* After this conversation, no one from the sheriff's office ever contacted Brittany. *Id.*

**B.      July 26, 2022: County officials find a bullet hole in a fuel tank**

The Corson County Highway Department maintains a shop in McIntosh. Trial Tr. Vol. I, at 163-64. The shop is next door and to the north of Rayce Hoisington's father's home. *Id.* at 165-66; 78.

Appellate Case: 25-1229      Page: 9      Date Filed: 06/27/2025 Entry ID: 5531845

Mr. Hoisington testified that he was at his father's residence about a week after Mr. Schneider was shot. *Id.* at 78. He was sitting with his father when they heard a loud pop and a noise like something hit a tank. *Id.* at 78-79. They did not know what the noise was. *Id.* at 79. They went outside and looked around, but they still did not know. *Id.*

That month, the Corson County highway superintendent learned that a fuel tank at the county shop had been damaged. *Id.* at 164-65. When he arrived, he observed what he believed to be a bullet hole on the south side of the tank, and a corresponding dent on the north side of the tank. *Id.* at 165. The superintendent did not know how the tank was damaged. *Id.* at 166. He reported the suspected bullet hole to the Corson County Sherriff. Trial Tr. Vol. II, at 226. The sheriff came out to look at the tank and to take pictures of it. *Id.* The sheriff recalled that the hole was on the north side of the tank, not the side of the Hoisington residence. *Id.* at 227.

The only witness who connected Mr. Schneider with the shooting of the gas tank was Rayce Hoisington's sister, Evelyn Hoisington. Trial Tr. Vol. II, at 207. Evelyn explained that she spoke to Mr. Schneider and his wife after Mr. Schneider allegedly assaulted her brother three months later, in October 2022. *Id.* at 205-06. She testified:

4

**Q** . . . What did the Defendant tell you about the gas tank?

**A** I questioned it, why he shot at my dad's house. Brittany seemed unaware. That's when I realized me and Brittany were out of the loop on what was happening and what was going on. And he apologized for shooting towards my dad's house.

**Q** What was the Defendant's demeanor like when he apologized?

**A** He seemed sympathetic. It felt sincere, kind of scared too. He didn't want us to press charges.

*Id.* at 207. Evelyn acknowledged that she did not see Mr. Schneider shoot the gas tank. *Id.* at 208. She did not live at her father's residence at the time of the shooting, and did not know who did it. *Id.* She was at her mother's home at the time. *Id.* at 214. Evelyn also acknowledged that the apology occurred after she had threatened Mr. Schneider in a Facebook post and in person to Brittany. *Id.* at 209-10.

### C. October 26, 2022: Fight between Mr. Schneider and Mr. Hoisington

On October 26, Mr. Hoisington lived with family, including his mother and his sister, in McIntosh. Trial Tr. Vol. I, at 52. That morning, he went to take out the trash. *Id.* at 59. Outside, he saw Mr. Schneider, who was also taking out trash. *Id.* at 60.

Mr. Hoisington testified that Mr. Schneider waved him over, and they met in a neighbor's yard. *Id.* Mr. Schneider wanted to talk to Mr. Hoisington about the July 19 shooting that injured him. *Id.* at 81-82. Mr. Schneider asked Mr. Hoisington, "Why did you do it?" *Id.* at 62-63. Mr. Hoisington testified that he did not know what Mr.

5

Schneider was asking about. *Id.* During this questioning, Mr. Hoisington's hands were in his sweater pocket. *Id.* at 63.

Mr. Hoisington testified Mr. Schneider struck him. *Id.* Mr. Hoisington testified that Mr. Schneider did not shove him, kick up dust, or verbally threaten him. *Id.* at 63-64. Mr. Hoisington put his hands up, and they fell to the ground together. *Id.* at 64. On the ground, the men fought and hit each other a couple of times. *Id.* at 85. Mr. Hoisington testified Mr. Schneider stood up first, told Mr. Hoisington to stand up, and then struck him again on the forehead. *Id.* at 64-65. When Mr. Hoisington stood up, Mr. Schneider struck him again. *Id.* at 66.

Throughout the confrontation, Mr. Hoisington did not call for help. *Id.* at 68. He did not try to run away, even though he believed he could have gotten away. *Id.* at 69. In describing the exchange, Mr. Hoisington stated that he and Mr. Schneider "got into a fight." *Id.* at 76, 80, 85.

Mr. Schneider directed Mr. Hoisington to come with him to Brittany's work, so that Mr. Hoisington could apologize to her. *Id.* at 66. Mr. Hoisington went with him. *Id.*

Mr. Hoisington and Brittany gave different accounts of what happened when Mr. Schneider and Mr. Hoisington arrived at Brittany's work. Mr. Hoisington testified Mr. Schneider went inside and brought Brittany out. *Id.* at 69. Mr. Schneider told Mr. Hoisington to apologize. *Id.* Mr. Hoisington testified he told Brittany, "I'm sorry your

6

husband got hurt." *Id.* at 71. Then, he testified, Mr. Schneider struck him a final time, breaking his nose and causing it to bleed. *Id.* Mr. Hoisington testified Brittany was present at the time. *Id.* He also testified Mr. Schneider threatened him, before telling Mr. Hoisington to go home. *Id.* at 72-73.

Brittany testified Mr. Schneider arrived at her work and told her that someone was there to apologize to her. *Id.* at 118. When she came outside, Mr. Hoisington was there, with a little blood on his lip. *Id.* Brittany testified Mr. Hoisington told her, "I'm sorry for shooting your husband." *Id.* at 119. She told him how scared the shooting had made her family feel because they were not sure if Mr. Hoisington would come shoot at their house. *Id.* at 119-20. Brittany then went back inside. *Id.* at 120. She testified Mr. Schneider did not hit Mr. Hoisington while she was present. *Id.* at 120.

After the exchange at Brittany's work, Mr. Hoisington walked home. *Id.* at 73. He told his sister he "got into it" with Mr. Schneider. *Id.* at 74. They called an EMT to check out Mr. Hoisington's injuries, and, eventually, the EMT called the sheriff. *Id.* at 74-75.

## II.    Procedural history

### A.    Trial

Based on the October 26 fight, Mr. Schneider was charged with assault by striking, beating and wounding, a misdemeanor. R. Doc. 1. He consented to proceeding before a magistrate judge. R. Doc. 19.

7

Prior to trial, the government filed a notice that it intended to introduce evidence under Fed. R. Evid. 404(b). R. Doc. 30; R. Doc. 31. The government stated it intended to introduce evidence "concerning a firearm discharge allegedly perpetrated by [Mr.] Schneider." R. Doc. 30, at 1. The firearm discharge at issue was the shooting of the county diesel tank. *See* R. Doc. 31. The government argued this shooting was admissible to show Mr. Schneider's animus toward Mr. Hoisington and to negate Mr. Schneider's claim of self-defense. *Id.* at 4. Mr. Schneider objected. R. Doc. 58. The court overruled the objection. Trial Tr. Vol. I, at 6-7. It found that the evidence was relevant, not overly remote, similar in kind to the charged offense, and supported by sufficient evidence. *Id.* Therefore, the court found, evidence of the shooting was admissible. *Id.* at 7.

The case proceeded to trial. On the second day of trial, the court provided the jury with a limiting instruction on how it could use the evidence of the shooting of the fuel tank. Trial Tr. Vol. II, at 188-89. The court instructed the jury they could only use the evidence

> for the limited purpose of deciding whether Mr. Schneider had the state of mind or intent necessary to commit the crime charged in the Indictment, had a motive to commit the acts described in the Indictment, acted according to a plan or in preparation for the commission of a crime, or . . . committed the acts he is on trial for by accident or mistake.

*Id.* The court included a limiting instruction in the final jury instructions. R. Doc. 75, at 13.

8

At Mr. Schneider's request, the court also instructed the jury on Mr. Schneider's self-defense theory. R. Doc. 75, at 7-8. The court instructed the jury that, as an element of the offense, the government was required to prove that Mr. Schneider did not act in self-defense. *Id.* at 7. The court then defined self-defense. *Id.* at 8.

The jury convicted Mr. Schneider of assault by striking, beating and wounding. R. Doc. 80.

## B.     Sentencing

The case proceeded to sentencing. At sentencing, the government argued for a sentence of one year imprisonment, with no supervised release. Sent. Tr., at 7. Mr. Schneider requested a sentence of one month. *Id.* at 8. This represented the time between when Mr. Schneider was arrested for violating the conditions of his pretrial release, and when he was indicted for a felony offense in *United States v. Schneider*, No. 1:23-cr-10027 (D.S.D.). *Id.*

During the hearing, the court asked the parties if there was any reason why it could not or should not impose a sentence of time served. *Id.* at 7, 16. The government did not have any objection to the time-served sentence. *Id.* at 7. Defense counsel argued against a time-served sentence because it would reduce the amount of time that the Bureau of Prisons would credit to Mr. Schneider's felony sentence. *Id.* at 16-17. Defense counsel expected that, if the court imposed a sentence of time served,

9

the BOP would credit the time Mr. Schneider had served only to this case, and not to the felony case. *Id.* Instead, defense counsel asked the court to impose a sentence with a specified term. *Id.* at 17.

The magistrate judge responded that the BOP could not apply all the time Mr. Schneider had served to this case because the statutory maximum sentence was one year, and he had already served more than one year in custody. *Id.*

The court also asked the probation officer how he believed the BOP would credit time if the court imposed a time-served sentence. *Id.* at 22. The probation officer stated he was unsure but suggested that "it would be more clear for the BOP if the Court would sentence [Mr. Schneider to] a specific amount of time versus a time served sentence." *Id.*

The court sentenced Mr. Schneider to time served, with no term of supervised release to follow. *Id.* at 31; R. Doc. 106. The court specifically rejected both the government's suggestion of one year in custody, and the defense's suggestion of one month. Sent. Tr., at 31, 8. The court believed, at the time of sentencing, "Mr. Schneider ha[d] served . . . in excess of the statutory amount that this Court can impose." *Id.* at 33. At the time of sentencing, Mr. Schneider had served "in excess of 400 days in custody." *Id.* at 7.

Appellate Case: 25-1229    Page: 16    Date Filed: 06/27/2025 Entry ID: 5531845

## C. Appeal to the district court

Mr. Schneider appealed the judgment and conviction to the district court. R. Doc. 109. He argued, *inter alia*, that the magistrate judge erred by admitting the 404(b) evidence. R. Doc. 118. He did not challenge his sentence on appeal to the district court. *See id.* The district court affirmed the judgment and all rulings. R. Doc. 123.

## SUMMARY OF THE ARGUMENT

The court erroneously admitted evidence under Fed. R. Evid. 404(b). To present evidence of a defendant's prior act under Rule 404(b), the government must establish by a preponderance of the evidence that the defendant committed that act. Here, the government did not prove by a preponderance of the evidence that Mr. Schneider shot at the Hoisington residence. No witness to the shooting could tie it to Mr. Schneider or explain how or why the shooting happened. Evelyn Hoisington's testimony that Mr. Schneider apologized for the shooting was not proof by a preponderance of the evidence when she was angry at the Schneiders and the apology only happened after she threatened them. The evidence tying Mr. Schneider to the shooting was speculative. The court should not have permitted its admission.

The court further committed plain error in sentencing Mr. Schneider to an illegal sentence. The maximum sentence authorized by statute for this offense was 12 months' imprisonment. Nevertheless, the court imposed a sentence of time served,

11

Appellate Case: 25-1229     Page: 17     Date Filed: 06/27/2025 Entry ID: 5531845

over 400 days in custody. This error was plain, affected Mr. Schneider's substantial rights, and affected the fairness, integrity, and public reputation of these proceedings.

This Court should remand the case for a new trial and resentencing.

## ARGUMENT

**I.   The court erred by admitting evidence under Rule 404(b) because the government did not present sufficient evidence to show Mr. Schneider committed the alleged wrongful act.**

The evidence of the shooting of the fuel tank was not admissible under Rule 404(b) because the government did not present sufficient evidence that Mr. Schneider committed the shooting. The court erred by admitting this evidence.

In an appeal from a judgment entered by a magistrate judge, the district court applies the same standard of review as the Court of Appeals applies to review of a judgment entered by a district judge. Fed. R. Crim. P. 59(g)(2)(D). This Court's review, in turn, "is governed by the same standards as was the district court's appellate review." *United States v. Bursey*, 416 F.3d 301, 305-06 (4th Cir. 2005). This Court reviews evidentiary issues "for a clear abuse of discretion." *United States v. Edwards*, 111 F.4th 919, 924 (8th Cir. 2024). The Court defers to the trial court, "and will only reverse 'when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.' " *Id.* (quoting *United States v. Johnson*, 860 F.3d 1133, 1139 (8th Cir. 2017)).

12

Under Rule 404(b), evidence of other acts is not admissible to prove a person has a propensity to commit a crime. *See* Fed. R. Evid. 404(b)(1). The evidence may be admitted for another purpose, such as to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To admit evidence under Rule 404(b), "the government must show that '(1) it is relevant to a material issue, (2) it is similar in kind and not overly remote in time to the charged offense, (3) it is supported by sufficient evidence, and (4) its potential prejudice does not substantially outweigh its probative value.' " *United States v. Parks*, 902 F.3d 805, 814 (8th Cir. 2018) (quoting *United States v. Ellis*, 817 F.3d 570, 579 (8th Cir. 2016)).

Rule 404(b) evidence must be supported by sufficient evidence. *Id.* To admit this evidence, the government must "submit sufficient evidence from which 'a reasonable jury could find by a preponderance of the evidence that [Mr. Schneider] committed the prior act[s].' " *United States v. Spratt*, — F.4th —, 2025 WL 1718226, at *4 (8th Cir. June 20, 2025) (quoting *United States v. Winn*, 628 F.3d 432, 436 (8th Cir. 2010)) (second alteration in original). "Proof connecting the defendant to the prior bad act is required for the evidence to be relevant." *United States v. Midkiff*, 614 F.3d 431, 443 (8th Cir. 2010). The government may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the

13

Appellate Case: 25-1229     Page: 19     Date Filed: 06/27/2025 Entry ID: 5531845

defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

The shooting of the fuel tank was inadmissible because the government did not prove by a preponderance of the evidence that Mr. Schneider committed the shooting. No witness testified that they saw the shooting or that they knew what or how it happened. The only witness who knew when it may have happened was Rayce Hoisington. *See* Trial Tr. Vol. I, at 78-79. He testified that he and his father heard "a loud pop." *Id.* They did not know what happened. *Id.* at 79. Even when they went outside to look around, they did not learn what happened. *Id.* Mr. Hoisington did not testify that he knew who shot the tank, where the shooter was located, what the shooter was aiming at, or why they were shooting. *See id.* at 78-79. Nor did the county officials know. *See id.* at 164-66. County officials only learned that there was a hole in the tank when it began leaking during refueling. *Id.* at 164-65.

It was purely speculation that the bullet was shot toward the Hoisington residence and reached the fuel tank on accident. No one knew the shooter's location or their motivation. And it was not clear which direction the bullet came from. Although the highway superintendent testified that the bullet hole was on the south side of the tank, *id.* at 165, the sheriff, who took photographs, testified that it was on the north side, Trial Tr. Vol. II, at 226-27. The north side of the tank was the side of the tank facing away from the Hoisington residence. *Id.* at 227. A bullet shot, as the

14

Appellate Case: 25-1229    Page: 20    Date Filed: 06/27/2025 Entry ID: 5531845

government theorized, from south of the Hoisington residence could not have hit the north side of the county tank.

Evelyn Hoisington's testimony was insufficient to establish Mr. Schneider committed the shooting by a preponderance of the evidence. This Court has found that the testimony of one witness may be sufficient to admit evidence under Rule 404(b). *United States v. Hayward*, 124 F.4th 1113, 1120 (8th Cir. 2025). But Evelyn was not a witness to the shooting. She did not see Mr. Schneider shoot the gas tank. Trial Tr. Vol. II, at 208. At the time of the shooting, she was at her mother's residence. *Id.* at 214. She did not know who did it. *Id.* at 208. She testified that she was "out of the loop on what was happening and what was going on." *Id.* at 207.

The only information Evelyn had regarding the shooting was that she claimed Mr. Schneider apologized for it. *Id.* She claimed this conversation occurred the day Mr. Schneider allegedly assaulted her brother, three months after the shooting. *Id.* at 208-09. That day, she was upset and angry. *Id.* at 204-05. After the fight, Evelyn went to Brittany Schneider's work to threaten Mr. Schneider. *Id.* at 209. Evelyn also made a Facebook post threatening him. *Id.* at 209-10. These threats frightened Brittany. Trial Tr. Vol. I, at 128-29. That afternoon, the Schneiders decided to speak to the Hoisingtons to reconcile and to make amends. *Id.* at 129-30, 138. It was during this reconciliation conversation, Evelyn testified, that Mr. Schneider apologized for the shooting. Trial Tr. Vol. II, at 207. But Brittany testified she did not remember Mr.

15

Appellate Case: 25-1229    Page: 21    Date Filed: 06/27/2025 Entry ID: 5531845

Schneider apologizing for shooting the tank during this conversation. Trial Tr. Vol. I, at 121.

The evidence is insufficient to show, by a preponderance of the evidence, that Mr. Schneider shot at Rayce Hoisington's father's residence. The day of the conversation, Evelyn was angry with the Schneiders and had been threatening them. The Schneiders, in turn, were frightened by her threats. The alleged admission is not supported by any other evidence connecting Mr. Schneider to the shooting. No witness placed him near the scene at the time of the shooting. No witness testified how or why the shooting occurred. The accusation that the tank was shot because someone was shooting toward the Hoisington residence was speculation.

The shooting of the fuel tank was only connected to Mr. Schneider "by unsubstantiated innuendo." *Huddleston*, 485 U.S. at 689. The government did not prove that he committed the shooting. And because the government could not tie Mr. Schneider to the shooting, the evidence was not admissible under Rule 404(b). The court should not have admitted this evidence.

The improper admission of the Rule 404(b) evidence affected Mr. Schneider's substantial rights and had "more than a slight influence on the verdict." *Edwards*, 111 F.4th at 924. At trial, Mr. Schneider argued he acted in self-defense. The government introduced the shooting evidence to show the absence of self-defense because the shooting tended "to show [Mr. Schneider] harbored a hateful grudge towards Rayce.

16

Such an animus would tend to make it more likely that [Mr. Schneider] intentionally punched Rayce . . . and to negate any claim of self-defense." R. Doc. 31, at 4. But the evidence of that animus only existed if the government could prove that Mr. Schneider committed the shooting and did so to injure Mr. Hoisington.

The inadmissible evidence went directly to Mr. Schneider's theory of defense. The speculative testimony that Mr. Schneider had shot at Mr. Hoisington's father's residence affected the jury's consideration of whether Mr. Schneider acted to protect himself. Based on this testimony, and this testimony alone, the jury could think that Mr. Schneider had a long-standing plan to injure Mr. Hoisington, and that the assault was the result of his plan. Because the evidence led the jury to believe Mr. Schneider had such a plan, it likely had a significant impact on the verdict. Although little evidence supported a finding that Mr. Schneider shot at the Hoisington residence, the court permitted the jury to hear this speculation. This erroneous admission was not harmless.

The court erroneously admitted evidence under Rule 404(b). That error affected Mr. Schneider's substantive rights. This case should be remanded for a new trial.

Appellate Case: 25-1229    Page: 23    Date Filed: 06/27/2025 Entry ID: 5531845

**II.** **The statutory maximum sentence was one year. The court plainly erred in imposing a sentence of time served because Mr. Schneider had served over 400 days in custody.**

The court sentenced Mr. Schneider to time served. Sent. Tr., at 32. At the time of the sentencing hearing, Mr. Schneider had served "in excess of 400 days in custody." *Id.* at 7.[3] This was greater than the one-year term authorized for assault by striking, beating, or wounding. *See* 18 U.S.C. § 113(a)(4). Thus, the court abused its discretion by imposing an illegal sentence.

This Court reviews a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). In reviewing a sentence, the Court must consider whether the sentencing court committed significant procedural error. *Id.* A sentencing court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* The court commits procedural error if it imposes an illegal sentence because "an error of law is necessarily an abuse of discretion." *See Williams v. York*, 891 F.3d 701, 707 (8th Cir. 2018) (cleaned up).

---

[3] Mr. Schneider was arrested on April 11, 2023. R. Doc. 8. He was ordered released on April 17, 2023. R. Doc. 5, at 4-6. Mr. Schneider was then arrested on July 6, 2023, for a violation of the condition of his pretrial release. R. Doc. 40. He remained in custody on this matter until his sentencing, on August 15, 2024. R. Doc. 38; R. Doc. 91; R. Doc. 102; R. Doc. 105. Thus, it appears Mr. Schneider served approximately 412 days in custody on this case.

18

Mr. Schneider did not object at the time of sentencing or on appeal to the district court. Therefore, this Court reviews for plain error. *United States v. McDill*, 871 F.3d 628, 632 (8th Cir. 2017) (considering error not raised at trial before the magistrate judge or on appeal to the district court). Applying plain error review, this Court can "review for plain error critical issues affecting a criminal defendant's substantial rights." *Id.* The Court has "discretion to reverse if (1) there is an error; (2) the error is plain; (3) the error affects the defendant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

The court committed an error that was plain. The offense that Mr. Schneider was found guilty of committing — assault by striking, beating or wounding — carries a maximum sentence of one year imprisonment. 18 U.S.C. § 113(a)(4). At the time of sentencing, Mr. Schneider had served more than one year in custody. By imposing a sentence of time served, the court imposed a sentence greater than the one-year term authorized by the statute.

The error here resulted from a misunderstanding of how the Bureau of Prisons calculates credit toward a sentence. The court acknowledged that, at the time of sentencing, Mr. Schneider had "served . . . in excess of the statutory amount that [it could] impose." Sent. Tr., at 33. It believed, however, that the BOP could, and would, realize that Mr. Schneider's maximum possible sentence was one year, and then would

19

Appellate Case: 25-1229    Page: 25    Date Filed: 06/27/2025 Entry ID: 5531845

credit any overserved time toward his felony sentence. *See* Sent. Tr., at 17. This was incorrect.

The BOP is not permitted to give Mr. Schneider credit on his felony case for the time he overserved prior to sentencing in this case. *See* 18 U.S.C. § 3585. A federal sentence begins "on the date the defendant is received in custody." *Id.* § 3585(a). A defendant is entitled to credit for any time he has served in pretrial custody if that time "has not been credited against another sentence." *Id.* § 3585(b). Because the court sentenced Mr. Schneider to "time served," every day he served prior to his sentencing in this case was credited to his sentence in this case. On his felony case, the BOP can only give him credit for time he served *after* his sentence was completed in this case, after the sentencing hearing. *See id.* The BOP cannot disregard the overserved days or credit them to Mr. Schneider's felony sentence.

The court imposed the time-served sentence based on a misunderstanding of how the BOP would calculate Mr. Schneider's custody time. If the court had sentenced Mr. Schneider to the maximum sentence of one year, then the days he had overserved prior to this sentencing would no longer be attributed to this case, and, therefore, would no longer be time "credited against another sentence." *See id.* The BOP would, instead, credit that time to Mr. Schneider's felony sentence. The credit would reduce the time remaining on Mr. Schneider's felony sentence. A one-year sentence would have achieved the court's goals of sentencing Mr. Schneider to the

20

maximum penalty for this offense and ensuring he received credit for the time he had overserved.

The statutory maximum sentence in this matter was one year. The sentence imposed, however, was greater than that term—it was over 400 days' imprisonment. It was plainly erroneous for the court to impose a sentence greater than the sentence authorized by the statute.

This error affected Mr. Schneider's substantial rights. He was required to serve more time in custody on this offense than was authorized by statute. The error continues to affect Mr. Schneider because it affects the calculation of his current prison term. Mr. Schneider remains in federal custody on his felony case.[4] Because the time that Mr. Schneider has overserved on this case cannot be credited to his felony sentence, the illegal sentence resulted in him serving more time in custody than was authorized. This affects his substantial rights.

The court's error further affects the fairness, integrity, and public reputation of judicial proceedings. *See United States v. Phillips*, 124 F.4th 522, 529 (8th Cir. 2024). Mr. Schneider was subjected to a sentence that was not authorized by statute and that is longer than anyone else would face for committing the same offense. *See id.* (finding plain error when the court imposes an illegal sentence and finding a sentence is unfair

---

[4] *See* Federal Bureau of Prisons, *Inmate Locator*, available at https://www.bop.gov/inmateloc/ (Reg. No. 53548-510) (last accessed June 26, 2025).

Appellate Case: 25-1229     Page: 27     Date Filed: 06/27/2025 Entry ID: 5531845

"because no one else convicted of [the same offense] faces the same punishment"). Imposing an illegal sentence tarnishes the integrity and reputation of Mr. Schneider's convictions.

The court committed plain error by imposing a sentence longer than the sentence authorized for this offense. This Court should remand for resentencing.

## CONCLUSION

Mr. Schneider respectfully requests this Court to vacate his conviction and to remand for a new trial and resentencing.

Dated this 26th day of June, 2025.

Respectfully submitted,

JASON J. TUPMAN
Federal Public Defender
By:

/s/   Anne M. Carter
Anne M. Carter, Assistant Federal Public Defender
Attorney for Appellant Justin James Schneider
Office of the Federal Public Defender
Districts of South Dakota and North Dakota
112 Roberts St. N., Suite 200
Fargo, ND 58102
Phone: (701) 239-5111
Fax: (701) 239-5098
Ecf8_fa@fd.org

22

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

In addition, I certify the electronic version of the foregoing has been scanned for viruses and that the scan showed the electronic version of the foregoing is virus free.

/s/ *Anne M. Carter*
Anne M. Carter, Assistant Federal Public Defender
Attorney for Appellant Justin James Schneider

23

Appellate Case: 25-1229    Page: 29    Date Filed: 06/27/2025 Entry ID: 5531845

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,527 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Garamond font.

Dated this 26th day of June, 2025.

 /s/   *Anne M. Carter*
Anne M. Carter, Assistant Federal Public Defender
Attorney for Appellant Justin James Schneider

24

Appellate Case: 25-1229    Page: 30    Date Filed: 06/27/2025 Entry ID: 5531845